IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| TREVIN DONTE' VOID, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 7:17-cv-00249 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| B. THACKER, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Trevin Donte' Void, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendant Officer Thacker[1] violated his Eighth and Fourteenth Amendment rights while housed[2] at the Red Onion State Prison ("ROSP"). (Compl., Dkt. No. 1.) Specifically, Void alleges, in his verified complaint,[3] that Officer Thacker sprayed him with mace without cause and that Void was given two false disciplinary charges by Officer Thacker to "cover his tracks," causing Void to be placed in segregation. This placement resulted in his loss of his job assignment and family visitation. Officer Thacker filed a motion for summary judgment, arguing that he perceived Void to be a threat, Void disobeyed an order, he used mace to restore good order, and that he is nonetheless entitled to the protection of qualified immunity.

---

[1] Defendant Thacker is a former employee of ROSP and is currently employed elsewhere.

[2] Virginia Department of Corrections (VDOC) records reflect that Void was incarcerated at ROSP from January 10, 2012, until July 25, 2017. He is presently housed at Sussex I State Prison. (Dkt. Nos. 17, 26-1.)

[3] A verified complaint by a *pro se* prisoner is to be considered as an affidavit when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citations omitted).

(Dkt. No. 17.) Void responded[4] (Dkt. No. 26-1) and filed an affidavit (Dkt. No. 26-2), and this matter is ripe for disposition. Upon review of the record, the court concludes that defendant's motion for summary judgment must be granted in part and denied in part.

## I. BACKGROUND

According to Void, on July 4, 2016, Officer Thacker intentionally sprayed Void's face with mace without cause. While Void was participating in recreation time in the B-1Pod, bad weather was approaching. Officer Thacker was told to shut the pod down because of the weather. He responded, and during his response the power went out, causing the lights to go out. Void states the lights only went out for "five [ ] seconds" in the pod area, while Officer Thacker states that it was about ten seconds. It is undisputed that there are windows in the cells and that light was still coming through the cell windows from the eighty-eight cells around the pod area. Void contends that this light was sufficient to see the pod area, and Officer Thacker states that it was not sufficient. When Officer Thacker arrived, Void states that he did not instruct the inmates to stop moving or not to move. Void did not move and was not threatening Officer Thacker, but was standing with others in the same area. Officer Thacker "panicked[,] spraying mace with no specific target" and "intentionally and unlawfully maced . . . [Void] in the face." Void dropped to the floor. Forty-five minutes after being sprayed with mace, Void was given two false disciplinary charges for disobeying an order and approaching a person in a threatening manner, which he claims were written so that Officer Thacker could "cover his tracks" for spraying Void with mace without cause. Contemporaneously with incurring the disciplinary

---

[4] Void includes facts in his response and in an answer that are not included in his verified complaint or his affidavit. Because he did not swear to those facts, but merely had his signature notarized, they will not be considered for purposes of summary judgment. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 113 (1993) (*pro se* parties must comply with procedural rules); *Hansan v. Fairfax Cnty. Sch. Bd.*, 405 F. App'x 793, 794 (4th Cir. 2010) (unpublished) (same); *Keystone v. Ponton*, No. 7:16cv00316, 2018 WL 4550452, at *3–4 (W.D. Va. Sept. 21, 2018) (citations omitted).

2

charges, Void was placed in segregation, where he remained for two weeks, causing him to miss visits with his family and lose his job in the pod. After his exposure to mace, Void was not examined by a nurse "until" he was placed in segregation. Eventually, the charges were dismissed. (Verified Compl. 3, Dkt. No. 1; Void Aff. ¶¶ 3-7, 10–11.)

In support of his motion for summary judgment, Officer Thacker submits in his affidavit[5] that, at approximately 7:23 p.m., on July 4, 2016, a power failure occurred in B-1 pod due to inclement weather. The power outage caused the lights to go out, and Officer Thacker, as the only correctional officer on the floor, shut down pod recreation and ordered all offenders to return to their cells. Due to the dark conditions, Officer Thacker could not identify individual offenders but could see their silhouettes. Void began approaching Officer Thacker, but because of the power outage, Officer Thacker was unable to see and identify that the individual was Void. Officer Thacker ordered Void to stop walking and get down on the floor, but Void failed to comply and continued walking towards him. Officer Thacker perceived this behavior as a threat and, as a means to protect himself, "removed the can of [oleoresin capisicum ("OC")] from its holster on [his] belt and administered a half-second to one-second burst of OC spray to [Void's] head and facial area." Void fell to the floor, and Officer Thacker retreated to the B-123 vestibule area to radio for assistance; however, the radio battery was dead. Approximately ten seconds later, the power was restored and the lights came back on. Officer Thacker exited the vestibule and identified Void on the floor. Officer Thacker then instructed Void to get up and escorted Void, without restraints, to the shower for decontamination. (Thacker Aff. ¶¶ 4–5, Dkt. No. 19.)

---

[5] Initially, Officer Thacker submitted an unsworn affidavit. The record reflects that Officer Thacker resubmitted to the court the same content in a sworn affidavit on September 19, 2018. (Thacker Aff., Dkt. No. 19.)

3

After Void finished the decontamination process, Officer Thacker instructed Void to sit at a table while he radioed a nurse to examine Void. Nurse Bledsoe submits in her affidavit that she examined Void for his exposure to OC spray, noting that Void was decontaminated and not in acute distress. After the nurse examined Void, Officer Thacker escorted Void from general population housing to segregation. Operations Manager King avers that Void remained in segregation until July 15, 2016, and was subsequently returned to general population housing. Officer Thacker wrote two disciplinary charges against Void. Void did not seek any further medical attention related to his exposure to OC spray. (Thacker Aff. ¶ 6; Bledsoe Aff. ¶ 4, Dkt. No. 17-2; King Aff. ¶ 4, Dkt. No. 17-3.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative[.]" *Anderson*, 477 U.S. at 249–250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a

4

genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322–324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Anderson,* 477 U.S. at 252.

### III. DISCUSSION

**A. Official Capacity Damages**

As a preliminary matter and to the extent Void seeks monetary damages against Officer Thacker in his official capacity, such claims are not cognizable under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Because the prison official defendant in his official capacity is not a person who can be sued under § 1983, the court must dismiss Void's attempted claims against him and grant Officer Thacker's motion for summary judgment with respect to these claims.

**B. Eighth Amendment Claim**

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). To determine whether a prisoner has stated a cognizable excessive force claim, the court looks at both a subjective and objective component. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).

5

The objective component is met if the inmate shows that the force used was "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[T]he objective component can be met by 'the pain itself,' even if an inmate has no 'enduring injury.'" *Williams*, 77 F.3d at 762 (quoting *Norman v. Taylor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1114 (1995)). To be sure, the Fourth Circuit has held that an inmate's "adverse physical reaction to [ ] pepper spray … establishes that the nature of the force [ ] used against [him] [is] nontrivial." *Tedder v. Johnson*, 527 F. App'x 269, 274 (4th Cir. 2013) (citing *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) (observing that pepper spray is designed to disable the person sprayed "by causing intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx") (internal quotation marks omitted)), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

For the subjective component, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Whether force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of injury inflicted, (4) the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *see, e.g.*, *Wilkins*, 559 U.S. at 37–39. "[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990) (internal quotations omitted). The extent of the prisoner's

6

injury is not dispositive; rather, when prison officials maliciously and sadistically use force to cause harm, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9; *see Wilkins*, 559 U.S. at 37–39 (holding that an excessive force claim involving only *de minimis* injury is not subject to automatic dismissal). "[T]he nature of the force, rather than the extent of the injury, is the relevant inquiry." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013).

With respect to the objective component of Void's excessive force claim, Officer Thacker's use of OC spray on Void's face was more than a nontrivial use of force. The OC spray caused Void to drop to the ground and required decontamination and a nurse's visit. The OC spray acted as it was designed to act by disabling Void after being sprayed. *See Tedder*, 527 F. App'x at 274.

Having determined that the objective component has been met, the court turns to the subjective component of Void's excessive force claim. Applying the *Whitley* factors, the court finds that Void's sworn factual statements satisfy the subjective component and are sufficient to create a genuine dispute of material fact. In the light most favorable to Void, Officer Thacker "intentionally and unlawfully" used OC spray on Void without cause even though Void did not disobey any orders—because none were given—and was standing still, in a non-threatening manner, with other inmates in the pod. Additionally, contrary to Officer Thacker's assertions, Void states that there was sufficient light for Officer Thacker to see and determine that Void was not a threat. Thus, in a light most favorable to Void, there was no need for the application of the OC spray because Void disobeyed no order and did not pose a threat. Thus, Officer Thacker's use of force was excessive. Additionally, since, according to Void, there was sufficient light to see that there was no threat, Officer Thacker could not reasonably perceive a threat to himself or

7

others.  With respect to Void's injuries, it is undisputed that he was sprayed in the face and had to be decontaminated.  Additionally, he alleges was not seen by a nurse until after his placement in segregation, leaving it unclear how long he suffered from the effects of OC spray.  Accordingly, Void states a cognizable claim against Officer Thacker for using excessive force, and there are sufficient factual disputes that preclude summary judgment on this claim.

Moreover, the existence of these factual disputes precludes Officer Thacker from invoking the protection of qualified immunity.  *Newkirk v. Enzor*, 674 F. App'x 276, 280 (4th Cir. 2017) ("[S]ummary judgment on qualified immunity grounds is improper as long as there remains any factual dispute regarding the actual conduct of the defendant[].") (quoting *Vathekan v. Prince George's Cty.*, 154 F.3d 173, 180 (4th Cir. 1998)).  For these reasons, Officer Thacker is not entitled to summary judgment on this claim.

## C. Fourteenth Amendment Claims

Void's claims with regard to violation of his Fourteenth Amendment rights are rather cursory.  He states that because of the two disciplinary charges against him, which were false, he was placed in segregation.  Because he was in segregation, he lost his pod job and his missed visits with his family, despite their six hour travel to see him.  In a light most favorable to Void, the court will assume, as it must, that the charges were false charges.  Even under these circumstances, however, Void cannot prevail on his Fourteenth Amendment claims as a matter of law.

### 1. Segregation as a result of false charges

Void has no cause of action under the Fourteenth Amendment for the bringing of false

disciplinary charges against him by Officer Thacker.[6] Provided an inmate receives notice and an opportunity to be heard following a disciplinary charge, a false disciplinary charge does not deprive an inmate of due process. *Obataiye-Allah v. Clark*, No. 7:14-cv-00159, 2014 WL 7240509, at *7 (W.D. Va. Dec. 18, 2014) (citing *Freeman v. Rideout*, 808 F.2d 949, 952–53 (2d Cir. 1986) ("mere filing of [a false] charge itself" does not constitute a due process violation if the inmate was granted a hearing)). Here, it is clear from the forms (Dkt. 19 at 6–9) that Void received notice of the charges, and he does not dispute that (Pl.'s Opp'n). Moreover, the charges against Void were dismissed by the Warden, and Void makes no claim involving the hearing process for the disciplinary charges.

### 2. Loss of prison job

Void also alleges his Fourteenth Amendment rights were violated when his placement in segregation caused him to lose his B-1 pod job. Defendant acknowledges that, although ROSP records reflect that Void was assigned a housekeeping job in the B-1 pod from April 25, 2016, through May 21, 2017, Void would not have been permitted to work his pod job while housed in segregation from July 4, 2016, through July 15, 2016. (King Aff. ¶ 4.)

It is well settled that inmates do not have a constitutional right to a prison job, and therefore, the deprivation of a prison job does not state an independent constitutional claim. *See Bulger v. U.S. Bur. of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978). *Cf.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (no due process right in qualification for institutional programs). A ROSP record reflects that Void's prison job was restored when he returned to general population housing, and he maintained that job until May

---

[6] The court notes that Void may have made an effort to bring a retaliation claim by asserting in his opposition to the summary judgment motion that Officer Thacker filed the false charges after Void told Officer Thacker that he would file a complaint. (Dkt. No. 26-1 at 9.) A plaintiff, however, cannot use a response to a motion for summary judgment to amend or correct the complaint challenged by a motion for summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

21, 2017. Even viewing the factual allegations in the light most favorable to Void, he is precluded from claiming a violation of his constitutional rights for the eleven-day-loss of his B-1 pod job. Accordingly, as a matter of law, Void cannot prevail on his Fourteenth Amendment claim with respect to loss of his pod job, and Officer Thacker is entitled to summary judgment.

### 3. Loss of visitation

Void further alleges that his Fourteenth Amendment rights were violated when his placement in segregation prevented him from seeing his family when they attempted to visit him.

Neither the United States Supreme Court nor the Fourth Circuit has recognized a constitutional right to prison visitation. *See Overton v. Bazzetta*, 539 U.S. 126 (2003) (rejecting constitutional challenge to prison regulations imposing a two-year visitation ban for inmates with multiple substance abuse violations); *Williams v. Ozmint*, 716 F.3d 801, 807–08 (4th Cir. 2013) (holding in the context of qualified immunity that suspension of an inmate's visitation privileges did not violate any clearly established constitutional right); *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977) (rejecting constitutional challenge to a 90-day restriction on a prisoner visitation policy), *aff'd per curiam*, 588 F.2d 913 (4th Cir. 1978).

Here, the absence of controlling authority establishing a constitutional right to visitation forecloses Void's argument that his time in segregation from July 4, 2016, until July 15, 2016, violated any constitutional right. As such, Void's inability to visit with his family does not implicate a constitutionally protected liberty interest. Accordingly, Void fails to state a cognizable claim under the Fourteenth Amendment with respect to loss of visitation while in segregation, and Officer Thacker is entitled to summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part. This matter will be set for trial as to Void's Eighth Amendment claim.

An appropriate order will be entered this day.

Entered: September 30, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge